IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
09/22/2009

In re:                              §
                                    §
ROYCE HOMES, LP,                    §    Case No. 09-32467-H4-7
                                    §
                                    §
Debtor.                             §

**MEMORANDUM OPINION ON THE TRUSTEE'S MOTION TO COMPEL ROYCE HOMES, LP TO TURNOVER DOCUMENTS AND OTHER INFORMATION**
[Docket No. 90]

### I. INTRODUCTION

Rodney Tow (the Trustee or Tow), the Chapter 7 Trustee for the estate of the debtor in the above-referenced Chapter 7 case, Royce Homes, LP (the Debtor), filed a motion requesting this Court to order Hammersmith Group, LLC, as the general partner of the Debtor, to file a Statement of Personal Assets and Liabilities Pursuant to Federal Rule of Bankruptcy Procedure 1007(g). This Court granted the Trustee's motion in an Order entered on July 7, 2009 and ordered Hammersmith Group, LLC to file these statements. On July 22, 2009, the Trustee filed a motion to compel John H. Speer (Speer), the manager of Hammersmith Group, LLC, and therefore the representative of the Debtor, to turn over several documents and other information regarding the Debtor's bankruptcy estate.

Speer argues that he has already turned over all relevant documents to the Trustee. The Trustee readily concedes that Speer has given him access to voluminous documents, but the Trustee asserts that only a small percentage of them are relevant to ascertaining the Debtor's financial condition. Speer argues that it is the Trustee's duty to wade through those documents and piece together the applicable information in order to determine the Debtor's financial affairs. This Court disagrees.

The Court concludes that the Debtor, through its designated representative, has a duty to provide the Trustee with the specific documents requested.[1] It is not enough to simply give the Trustee access to piles of documents and force him to sort through the information. "It is well settled that a [trustee] should not be required to drag information from a reluctant and uncooperative debtor. Because of the extraordinary relief offered under the Bankruptcy Code delay and avoidance tactics are inconsistent with, and offensive to, its purpose and spirit." *Anderson v. Wiess (In re Wiess)*, 132 B.R. 588, 593 (Bankr. E.D. Ark. 1991) (citing *In re Tully*, 818 F.2d 106 (1st Cir. 1987)); *see also In re Cochener*, 360 B.R. 542, 588 (Bankr. S.D. Tex. 2007), *aff'd in part, rev'd in part*, 382 B.R. 311 (S.D. Tex. 2007), *rev'd*, 297 Fed. Appx. 382 (5th Cir. 2008). Further, this Court holds that the Debtor has a duty to create corporate charts showing the various entities associated with the Debtor, as doing so comports with the Bankruptcy Code's requirement of cooperation between a debtor and a trustee.

The Court makes these findings of fact and conclusions of law pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014.[2] To the extent that any finding of fact is construed as a conclusion of law, it is adopted as such. Moreover, to the extent that any conclusion of law is construed as a finding of fact, it is adopted as such. The Court reserves its right to make additional findings of fact and conclusions of law as it deems appropriate or as may be requested by any of the

---

[1] In its Order of July 7, 2009, this Court designated Speer as the representative of the Debtor. [Docket No. 75.] The Court did so because Hammersmith Group, LLC is the general partner of the Debtor and has been ordered to file a Statement of Personal Assets and Liabilities [Docket No. 72], and because Speer is the sole manager and president of Hammersmith Group, LLC and has been designated as the representative of the Hammersmith Group, LLC for purposes of this Chapter 7 case. [Docket No. 74.]

[2] Any reference herein to "the Code" refers to the United States Bankruptcy Code. Further, reference to any section (i.e. §) refers to a section in 11 U.S.C., which is the United States Bankruptcy Code. Reference to a "Rule" or "Bankruptcy Rule" refers to the Federal Rules of Bankruptcy Procedure.

parties.

## II. FINDINGS OF FACT

1. On April 7, 2009, Wisenbaker Builder Services, Inc., Luxury Baths by Arrow, Suncoast Post Tension Ltd., and Builders Mechanical, Inc. filed an involuntary petition against the Debtor for relief under Chapter 7 of the Bankruptcy Code. [Docket No. 1.] When the Debtor was fully operational, it was a large, leading home builder with over 300 employees. [Aug. 6, 2009 Tr. 101:15–25.]

2. On April 30, 2009, this Court entered an Order for Relief under Chapter 7. [Docket No. 11.]

3. On April 30, 2009, Tow was appointed as Chapter 7 Trustee and continues to act in that capacity. [Docket No. 26.]

4. The Debtor's general partner is Hammersmith Group, LLC, a Delaware limited liability company, (the General Partner). [Docket No. 26, Ex. A.]

5. Speer is the sole manager and president of the General Partner. [Docket No. 68.]

6. On June 23, 2009, the Trustee filed a Motion to Appoint John Speer as Designated Representative of Hammersmith Group, Inc.[3] [Docket No. 60.] On July 7, 2009, this Court issued an Order Appointing John Speer as Designated Representative of Hammersmith Group, LLC Pursuant to Federal Bankruptcy Rule 9001(5)(B). [Docket No. 74.]

7. On June 24, 2009, the Trustee filed a Motion to Appoint John Speer as Designated

---

[3] The Trustee used the name "Hammersmith Group, Inc." in this motion. In an affidavit that Speer filed with this Court on August 26, 2009 [Docket No. 111], Speer stated as follows: "On December 30, 2008, Hammersmith Group, Inc. converted from a corporation to a Delaware limited liability company and changed its name to Hammersmith Group, LLC pursuant to Delaware law." Accordingly, at the time the Trustee filed this motion, the entity's name had already been changed to Hammersmith Group, LLC. Indeed, at a hearing on July 7, 2009, David Jones, who is representing Hammersmith Group, LLC, made handwritten changes to the order that this Court signed on that day in order to clarify that the entity presently in existence is "Hammersmith Group, LLC" as opposed to "Hammersmith Group, Inc." [Docket No. 72.]

      Representative of Royce Homes, LP. [Docket No. 62.] On July 7, 2009, this Court also issued an Order Appointing John Speer as Designated Representative of Royce Homes, LP Pursuant to Federal Bankruptcy Rule 9001(5)(B). [Docket No. 75.]

8. Speer ran the Debtor beginning in 2006 and gained extensive personal knowledge of the operations of the Debtor during that time. [Aug. 6, 2009 Tr. 29:1–5.]

9. On May 15, 2009, the Trustee filed a Motion Requesting this Court to Order Hammersmith Group, LLC, as General Partner of the Debtor, to File a Statement of Personal Assets and Liabilities. [Docket No. 26.] The Court held a hearing on this matter on June 23, 2009, and on July 7, 2009, the Court heard an argument on the record that Speer, as representative of the General Partner of the Debtor, should be responsible for preparing the statements requested. On July 7, 2009, this Court issued an Order that Hammersmith Group, LLC, as General Partner of the Debtor, had to file a Statement of Personal Assets and Liabilities in the Debtor's main bankruptcy case. [Docket No. 72.]

10. At the hearing on July 7, 2009, the Trustee submitted to the Court a document entitled "Documents Requested," containing a list of all financial and corporate documents requested by the Trustee and detailing which documents had been turned over by Speer to the Trustee.[4] These requests are reflected in the motion filed by the Trustee on July 22, 2009. [Docket No. 90.] However, rather than turning over to the Trustee the specific documents requested, Speer simply provided the Trustee with access to two storage facilities containing stacks of

---

[4] The Trustee had not yet filed the Motion seeking an order from this Court requiring the relief he now requests. However, at the July 7 hearing, the issue of document production surfaced and was discussed for a period of time. Indeed, the Court instructed counsel for the Trustee to file the appropriate motion if the Trustee wanted this Court to issue any relief.

4

       documents and old computer servers, most of which are wholly unresponsive to the Trustee's request. [Aug. 6, 2009 Tr. 26:23–25, 27:1–22.]

11. On July 22, 2009, the Trustee filed his Motion to Compel Royce Homes, LP to Turnover Documents and Other Information Request for Hearing, and Request that John Speer be Ordered to Appear at the Hearing (the Motion). [Docket No. 90.]

12. On July 30, 2009, Speer filed a Response to the Motion (the Response). [Docket No. 94.] Speer takes the position that the Debtor has already turned over to the Trustee all of the documents sought and that the Trustee has the duty to filter through the voluminous documents to find the particular ones requested. Speer argues that the Trustee should examine all of the data on the server to find the requested information rather than to rely on Speer's "imperfect human memory."[5] [Docket No. 94, ¶ 5.]

13. On July 28, 2009, the Debtor filed its Schedules A, B, D, E, F, G, and H. [Docket No. 92.] The Debtor's Schedules are approximately 3,000 pages in length.

14. On August 6, 2009, this Court held a hearing on the Motion and the Response. During the hearing, three witnesses testified: (a) the Trustee; (b) Christopher Price, a certified computer examiner hired by the Trustee and charged with the task of accessing the files on the Debtor's old computer servers; and (c) Speer. A transcript of the August 6, 2009 hearing is available on the docket for this case. [Docket No. 109.]

15. At the August 6, 2009 hearing, the Trustee testified that he has made reasonable efforts to

---

[5] Speer did not use the phrase "imperfect human memory" in his testimony but rather in the Response. However, at the August 6, 2009 hearing, Speer testified as follows with respect to his own memory: "I'm very concerned about the possibility of creating something and then something accidentally being left off because I didn't have a good memory, and then being blamed for it being inaccurate." [Aug. 6, 2009 Tr. 106:25, 107:1–3.]

collect the information needed to administer the Debtor's estate. For instance, he testified that he, along with approximately eight other people—including two CPAs, one computer technician, and three attorneys—spent an entire day reviewing the documents in the two storage facilities attempting to find any relevant information about the Debtor's financial condition. [Aug. 6, 2009 Tr. 67:23–25, 68:5–9.] The Trustee and the other persons who assisted him searched through one entire storage facility and through a substantial portion of the second facility, yet primarily found documents that had nothing to do with the administration of the estate. [Aug. 6, 2009 Tr. 27:1–22.] The Trustee testified that it would likely take thousands of dollars to continue the search for the documents still needed for the administration of the estate. [Aug. 6, 2009 Tr. 75:11–16.] Currently, the Debtor's Schedule A lists the total value of real property as $4,622.00 [Docket No. 92, p. 2], and Schedule B lists the total value of personal property as $867,883.61 [Docket No. 92, p. 6], for total assets in the amount of $872,505.61. [Docket No. 92, p. 1.] However, Schedule B reflects that the Debtor's estate has no cash whatsoever to pay anyone to search for the documents. Moreover, the assets that are shown to have value are not easily liquidatable. Finally, this Court questions whether certain of the assets that have been valued—such as accounts receivable—can actually be collected. For these reasons, the Court finds that the estate has no cash or cash equivalents to pay the level of expenses that the Trustee would necessarily incur to continue an extensive search for the documents still needed for the proper administration of this Chapter 7 estate.

16. At the August 6, 2009 hearing, the Trustee also testified that he needed the requested documents and information prior to conducting a 2004 examination of Speer. Specifically,

regarding the change in corporate structure in September 2006 and the significant distribution that was allegedly made to the Debtor's limited partners, the Trustee testified that "what we need so we can conduct a 2004 exam is the documents that support that transaction." [Aug. 6, 2009 Tr. 36:6–8.][6] The Trustee also testified that he needs Speer to create the Debtor's corporate charts showing the relationships among a number of companies. Specifically, the Trustee requests that Speer create one chart for the time period prior to September 2006, as well as one chart for each month for the time period from September 2006 through July 2009. [Aug. 6, 2009 Tr. 30:13–19.]

### III. CREDIBILITY OF WITNESSES

At the August 6, 2009 hearing, three witnesses testified: (a) the Trustee; (b) Christopher Price, a certified computer examiner hired by the Trustee and charged with the task of accessing the files on the Debtor's old computer servers; and (c) Speer. The Court finds all three witnesses to be credible.

### IV. CONCLUSIONS OF LAW

**A.    Jurisdiction and Venue**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This contested matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), and the general "catch-all" language of 28 U.S.C. § 157(b)(2). *See In re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under section 157 if it invokes a substantive right provided by

---

[6] At the hearing, the Trustee testified that the tax returns of the Debtor reflect that millions of dollars were distributed to the Debtor's limited partners in 2006, 2007, and 2008. [Aug. 6, 2009 Tr. 35:1–9.] Therefore, in order to fulfill his fiduciary duties to creditors of the Debtor's Chapter 7 estate, it makes sense that the Trustee has requested specific documents evidencing these distributions.

title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."); *In re Ginther Trusts*, No. 06-3556, 2006 WL 3805670, at *19 (Bankr. S.D. Tex. Dec. 22, 2006) (holding that a matter may constitute a core proceeding under 28 U.S.C. § 157(b)(2) "even though the laundry list of core proceedings under § 157(b)(2) does not specifically name this particular circumstance"). Venue is proper pursuant to 28 U.S.C. § 1408(1).

**B.    Speer has a duty to find the specific documents requested by the Trustee.**

   **1.    Statutory Duty**

Pursuant to the Bankruptcy Code and the Bankruptcy Rules, Speer, as the designated representative of the Debtor, has a duty to turn over to the Trustee the particular documents requested. At the hearing on July 7, 2009, the Debtor[7] argued that it has made a reasonable effort to turn over these documents because the Debtor gave the Trustee access to the storage facilities where they are located. [Finding of Fact No. 9.] However, the Code and the Rules require that the Debtor do more than simply give the Trustee access to a pile of records and leave it to the Trustee to sift through them.

First, 11 U.S.C. § 521(a)(3) requires the Debtor to "*cooperate with the trustee* as necessary to enable the trustee to perform the trustee's duties under this title." 11 U.S.C. § 521(a)(3) (emphasis added); *see also* Fed. R. Bankr. P. 4002(a)(4) ("[T]he debtor shall . . . cooperate with the trustee in the preparation of an inventory, the examination of proofs of claim, and the *administration of the estate*.") (emphasis added). Second, the Trustee has a duty under 11 U.S.C. § 704 to collect and

---

[7] Speer is the sole manager and president of Hammersmith Group, LLC. [Finding of Fact No. 5.] Moreover, Speer is the designated representative of the Hammersmith Group, LLC, and Speer is also the designated representative of the Debtor. [Finding of Fact Nos. 6 & 7.] Accordingly, for the purposes of this Memorandum Opinion, when the Opinion refers to the "Debtor," it necessarily is referring to Speer.

reduce to money the property of the estate and to investigate the financial affairs of the Debtor. 11 U.S.C. § 704(a)(1) & (4). Because the items and information requested by the Trustee are necessary for the Trustee to perform his duties under § 704, the Court concludes that Speer has an affirmative duty to cooperate with the Trustee and turn over the documents requested pursuant to 11 U.S.C. § 521(a)(3) and Rule 4002(a)(4).[8]

Lastly, 11 U.S.C. § 105(a) authorizes the Court to issue any order that is necessary or appropriate to carry out the provisions of the Bankruptcy Code. Requiring Speer to turn over the documents requested by the Trustee in order to administer this estate is necessary and appropriate to carry out the provisions of the Bankruptcy Code. This Court has the equitable power under § 105 "to facilitate the implementation of other Bankruptcy Code provisions" and "is well within its authority if it exercises its equitable powers to enforce a specific code provision." *Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 444 (1st Cir. 2000) (internal quotation marks and citations omitted). Indeed, the Supreme Court recently determined that bankruptcy courts have "broad authority . . . to take any action that is necessary or appropriate 'to prevent an abuse of process' described in § 105 of the Code." *In re Marrama*, 549 U.S. 365, 375 (2007). This Court may therefore invoke § 105(a) to fashion an "equitable remedy [that] is demonstrably necessary to preserve a right elsewhere provided in the Code." *Id.* For all of these reasons, this Court has the power to order Speer to turn over to the Trustee the specific documents requested.

---

[8] Because the Debtor is a defunct partnership, a representative of the Debtor had to be appointed to fulfill the Debtor's duties. Therefore, the duty of a debtor to cooperate with a Chapter 7 trustee applies equally to a *representative of the debtor*, such as Speer in the case at bar.

9

In sum, the Code and the Rules impose a duty on Speer to cooperate with the Trustee by gathering the particular documents requested and turning them over to the Trustee, and also by providing corporate charts.

### 2. Common Law Duty

Further, case law compels the same result. Although the majority of cases regarding a debtor's failure to cooperate with a trustee deal with the debtor's withholding of information from the trustee, this case deals with the rare situation in which the Debtor turns over voluminous documents to the Trustee and expects the Trustee to sift through them to locate the specific documents requested.

It is important to note that "the relationship between a trustee and a debtor is not supposed to be adversarial." *In re Cochener*, 360 B.R. at 588. As one bankruptcy court noted,

> [a] chapter 7 debtor has an affirmative duty to cooperate with the case trustee in the administration of the bankruptcy estate. This includes a duty to surrender to the trustee all property of the estate. This duty to cooperate is based upon one of the very simple goals of any chapter 7 case—to maximize the return to creditors through the orderly liquidation of the assets. Where a debtor fails to cooperate with the case trustee, the trustee is then forced to expend estate resources in pursuing the debtor's cooperation, which results in the reduction of the distribution to creditors.

*In re Stinson*, 269 B.R. 172, 176 (Bankr. S.D. Ohio 2001) (internal citations omitted); *see also In re Paige*, 365 B.R. 632, 638–39 (Bankr. N.D. Tex. 2007). Such circumstances are inimical to the spirit and purposes of the Code, as one of the twin pillars of bankruptcy is the payment of claims. *In re T-H New Orleans Ltd. P'ship*, 188 B.R. 799, 807 (E.D. La. 1995), *aff'd*, 116 F.3d 790 (5th Cir. 1997) (noting that one of the two competing goals of bankruptcy "is the satisfaction of valid claims against the estate."). Indeed, a "trustee is not required to play detective or to chase the debtors into court to gain their cooperation." *In re Cochener*, 360 B.R. at 588; *see Wendel v. Kent (In re Kent)*,

92 B.R. 540, 543 (Bankr. S.D. Fla. 1988) ("The trustee is not required to play detective and is not provided the resources to do so.").

As discussed above, Speer, as the Debtor's representative, has an affirmative duty under § 521(a)(3) to cooperate with the Trustee. This duty includes the obligation to sift through the voluminous boxes of documents to locate the specific records requested by the Trustee. *In re Kent*, 92 B.R. at 543 ("It is not enough for the debtor to make available eight file cabinets of records . . . and invite the trustee or his attorney to help themselves."); *Gold v. Guttman (In re Guttman)*, 237 B.R. 643, 650 (Bankr. E.D. Mich. 1999) (holding that it was the debtor's duty to take action and obtain the documents requested by the trustee and turn them over, not to send the trustee in search of them).

Furthermore, the Court finds *Govaert* particularly relevant. *See Govaert v. S. Nat'l Bank of N. Carolina (In re Caserta)*, 182 B.R. 599, 610–11 (Bankr. S.D. Fla. 1995). In *Govaert*, the court stated: "[t]he fact that the Debtor turned over several boxes of records to the trustee at the commencement of the case is not enough." *Id*. Instead, the court held that the debtor was "under an affirmative duty to assist the trustee in reconstructing records and piecing together information." *Id.*; *see Morton v. Dreyer (In re Dreyer)*, 127 B.R. 587, 595 (Bankr. N.D. Tex. 1991) ("[A] debtor is under an affirmative duty to assist the Trustee in assembling records").

In sum, this Court concludes that Speer, as the representative of the General Partner of the Debtor, has an affirmative duty to cooperate with the Trustee and, in keeping with this duty, must provide the Trustee with the specific documents that he has requested. This approach is equitable given that Speer is much more familiar with the documents. Indeed, Speer has been running the Debtor since 2006 and has extensive personal knowledge of the operations of the company in

11

addition to knowledge regarding the location of several documents requested by the Trustee. [Finding of Fact No. 8.] Accordingly, Speer—rather than the Trustee—could more efficiently perform the detective work. This approach will also preserve the assets of this Chapter 7 estate for the benefit of the creditors, as the Trustee will not unnecessarily expend estate resources searching for the documents. Continuing the fishing expedition for the requested documents would require thousands of dollars—money that this estate simply does not have. [Finding of Fact No. 15.][9] This approach also comports with the spirit of the Bankruptcy Code. See *In re Melenyzer*, 140 B.R. 143, 154 (Bankr. W.D. Tex. 1992) (holding that a bankruptcy trustee has a fiduciary duty to maximize distribution to the creditors).

### C. Speer has a duty to create corporate charts.

Additionally, Speer, as the representative of the Debtor, must construct corporate charts to assist the Trustee is understanding the relationship among the various entities associated with the Debtor. Specifically, the Trustee requests that Speer create one chart for the time period prior to September 2006, as well as one chart for each month for the time period from September 2006 through July 2009. [Finding of Fact No. 16.] This task also falls within the Debtor's duty to cooperate with the Trustee. See 11 U.S.C. § 521(a)(3); Fed. R. Bankr. P. 4002(a)(4).

Speer argues that much of the information needed by the Trustee to create these charts is likely contained on the Debtor's server, which is already in the Trustee's possession. Therefore,

---

[9] The Court is mindful of the argument that requiring Speer to produce to the Trustee the specific documents which the Trustee has requested could require substantial time on Speer's part. Nevertheless, as between requiring Speer to spend the time and money locating these specific documents, versus requiring the Trustee, this Court choose the former. After all, Speer, through the General Partner, was in charge of the Debtor and has extensive knowledge about its operations; whereas, the Trustee has never had control, directly or indirectly, of the Debtor and its records. Moreover, the estate presently has no cash to pay the expenses necessary for paying personnel to locate these documents. In sum, equity can dictate no other choice.

Speer argues that the Trustee should examine all of the data on the server to find the requested information rather than to rely on Speer's "imperfect human memory." [Finding of Fact No. 12.] Additionally, Speer argues that the information requested by the Trustee is public information, and therefore it is possible for the Trustee to create these charts himself. While it may be possible for the Trustee to prepare the charts, it will be less costly for the Debtor's estate and far easier for Speer to complete this task given Speer's familiarity with these various associated entities.

This Court has previously held that the relationship between a trustee and a debtor is not supposed to be adversarial. *In re Cochener*, 360 B.R. at 588. As already noted, "[a] trustee is not required to play detective." *Id.* Here, Speer has first-hand knowledge of the various business entities' relationships to the Debtor's business, and thus, constructing corporate charts would take considerably less time for him. By contrast, the Trustee, who is unfamiliar with the various entities related to the Debtor, would have to do significantly more research to determine the Debtor's relationships with these various entities.

Furthermore, "[i]t is well settled that a [trustee] should not be required to drag information from a reluctant and uncooperative debtor. Because of the extraordinary relief offered under the Bankruptcy Code, delay and avoidance tactics are inconsistent with, and offensive to, its purpose and spirit." *In re Wiess*, 132 B.R. at 593. Here, Speer's knowledge and memory of the Debtor's business, although "imperfect," would be of measurable assistance to the Trustee in the administration of the estate.[10] As such, Speer's reluctance to cooperate with the Trustee runs counter to the spirit of the Bankruptcy Code. Therefore, for all of the reasons set forth above, this

---

[10] The Court believes that Speer has sufficient knowledge of the Debtor's various business entities. Therefore, despite Speer's claim of "imperfect human memory," this Court is confident in Speer's ability to draft and produce the requested charts.

13

Court concludes that creating the corporate charts falls well within the Debtor's duties imposed by the Bankruptcy Code.

**D.     The Trustee should be able to review relevant documents prior to taking the 2004 examination of the Debtor's representative.**

Counsel for Speer argues that the Trustee should take Speer's 2004 examination before Speer should be required to spend the time and effort to produce the documents requested by the Trustee. Conversely, the Trustee argues that requiring Speer to produce these documents before the 2004 examination will allow the Trustee to conduct a more efficient and effective 2004 examination because he will have first had the opportunity to review and analyze the relevant documents. The Court agrees with the Trustee.

Given that the Debtor was a leading home builder at one time [Finding of Fact No. 1], and given that significant transfers of the Debtor's property allegedly occurred prior to the petition date [Finding of Fact No. 16], Speer should be required to turn over information which will allow the Trustee to formulate inquiries for the 2004 examination. For example, regarding the change in corporate structure in September 2006 and the significant distribution that was allegedly made to the Debtor's limited partners, the Trustee testified that "what we need so we can conduct a 2004 exam is the documents that support that transaction." [Finding of Fact No. 16.] The Court agrees with the Trustee. In order to conduct an efficient and effective 2004 examination of Speer, the Trustee must first have the documents and information requested so that he can review these materials and come well-prepared and well-organized to the 2004 examination.

14

## V. CONCLUSION

The Court concludes that Speer has a duty to locate and turn over to the Trustee the particular documents which the Trustee has requested. Additionally, it is Speer's duty to cooperate with the Trustee by creating corporate charts showing the relationship among the various entities associated with the Debtor. Although Speer's counsel has argued that this task is onerous and should not fall on Speer, the Court concludes that the production of the documents requested and the creation of corporate charts would be far more onerous, if not impossible, for the Trustee. Additionally, because both the Bankruptcy Code and case law impose an affirmative duty on the Debtor to cooperate with the Trustee, the Court concludes that these tasks fall within the Debtor's duties. Therefore, Speer, as the representative of the Debtor, should be properly charged with these tasks.

This conclusion will assist the Trustee in efficiently and effectively administering the estate and will further the purpose and spirit of the Bankruptcy Code. An order consistent with this Opinion will be entered on the docket simultaneously with the entry on the docket of this Opinion.

Signed on this 22nd day of September, 2009.

Jeff Bohm
United States Bankruptcy Judge