### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | **CASE NO. 09-32467-H4-7** |
| | § | |
| **ROYCE HOMES, LP** | § | |
| | § | **(Chapter 7)** |
| **DEBTOR** | § | |

---

### TRUSTEE'S EMERGENCY MOTION TO COMPEL PRODUCTION OF DOCUMENTS CLAIMED AS PRIVILEGED BY JOHN SPEER

---

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**TO THE HONORABLE JEFF BOHM, UNITED STATES BANKRUPTCY JUDGE:**

Rodney Tow, chapter 7 Trustee for Royce Homes, L.P. ("Trustee"), files this Emergency Motion to Compel Production of Documents Claimed as Privileged by John Speer ("Motion") and in support thereof would show as follows:

## Summary of Relief Requested

1.    The Trustee seeks to compel the production of various documents claimed as privileged by John Speer ("Speer").  The privilege log provided by Speer is deficient in that it does not allow the Trustee to fully assess the validity of each privilege claim. Notwithstanding, the Trustee believes, based upon the information that was provided, that there are a number of documents on Speer's privilege log for which there is no privilege or for which the privilege has been voluntarily waived.  The Trustee seeks an order from this Court (i) compelling production of such documents; and (ii) finding that such documents are not subject to a valid claim of privilege and/or that the privilege has been waived.

## Jurisdiction and Venue

2.    Jurisdiction and Venue are undisputed.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334(b), 28 U.S.C. §157(a) and (b)(2)(A) and (O).

## Background

**General Background**

3.    On April 7, 2009 (the "Petition Date"), four of Royce Homes' creditors, Wisenbaker Builder Services, Inc., Suncoast Post Tension, Ltd., Builders Mechanical, Inc., and Luxury Baths by Arrow (collectively, the "Petitioning Creditors") filed a chapter 7 involuntary petition against Royce Homes.  On April 30, 2009, the Court entered the Order for Relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court").

4.     As of the Petition Date, the Debtor listed no significant assets and more than $33 million in liabilities.

5.     To date, the claims register reflects approximately $39 million in claims against the estate.

6.     The Debtor stopped operating in July 2008 and the involuntary petition was filed against the Debtor on April 7, 2009.   In the waning 22 months of the Debtor's operations, approximately $40,000,000 was either transferred to various insiders, equity interest, holders or Amegy Bank. N.A..  Without these transfers, the estate's $39,000,000 in claims could be paid in full.

**The Trustee's Investigation and Speer Subpoena**

7.     The Trustee served a subpoena duces tecum to John Speer dated September 14, 2010 ("Speer Subpoena").  Speer has produced some of the documents which are responsive to the Speer Subpoena.  However, in response to the Speer Subpoena, the Trustee received a privilege log with approximately one thousand claims of privilege ("Speer Privilege Log").

8.     As part of the Trustee's investigation into the financial affairs of Royce Homes, L.P. ("Royce" or "Debtor"), the Trustee has subpoenaed and received over 230,035 pages of documents from various third parties.   The Trustee expects to continue to receive documents from various third parties over the coming months.

9.     When the Debtor shut down, the existing paper files and some computers were piled into two completely packed storage units.   The Trustee found a few computers in these storage units, but most of the electronic data belonging to the Debtor was destroyed in late 2008 when Speer sold computers or otherwise disposed of such data.

10.     The Trustee, with the assistance of IT professionals, was able to extract some data from the computers from the storage units.   These computers contained Royce e-mail databases, transactional documents, and data related to financial records of the Debtor. The Trustee later discovered additional electronic data from the computer of Nancy Boothe, Speer's former assistant.

11.     Nancy Boothe ("Boothe") was Speer's assistant at Royce Homes, L.P.  *See* Affidavit of Nancy Boothe at para. 2, attached hereto as Exhibit "A" and incorporated herein for all purposes ("Boothe Affidavit").   Prior to leaving Royce, the email files of some employees were backed up on Boothe's computer in order to preserve them.  *See* Boothe Affidavit at para. 4.

12.     When Boothe left her employment at Royce, she was instructed by Speer to take her computer with her.   *See* Boothe Affidavit at para. 5 and 12.  There were no restrictions placed on the use of Boothe's computer.  *See* Boothe Affidavit at para. 12.

13.     After Boothe left her employment at Royce, she was contacted by Speer in her personal capacity to help him review his emails in connection with litigation with George Kopecky.  *See* Boothe Affidavit at para. 6.  Boothe was paid by Speer directly to review his emails.  *See* Boothe Affidavit at para. 6.

14.     Speer had Ryan Greshem go to Boothe's house and load several thousand emails on her computer.  *See* Boothe Affidavit at para. 8.  These were emails from Speer's computer at Royce.  *See* Boothe Affidavit at para. 7.

15.     Boothe reviewed these emails, printed them, and sorted them chronologically between privileged and non-privileged documents in connection with litigation with Kopecky.

*See* Boothe Affidavit at para. 8.   Boothe printed eight boxes of emails.   *See* Boothe Affidavit at para. 8.

16.   Boothe was later informed that Speer settled the litigation with Kopecky and no longer needed the emails.   *See* Boothe Affidavit at para. 9.   Boothe placed the eight boxes of printed emails in the recycle bin.   *See* Boothe Affidavit at para. 9.   Speer never requested that Boothe return the paper or electronic copies of these documents.   *See* Boothe Affidavit at para. 9.

17.   After the Royce bankruptcy case was filed, Boothe contacted Speer to advise him that her computer was discoverable.   *See* Boothe Affidavit at para. 10.   Speer did not protest.   *See* Boothe Affidavit at para. 10.

18.   After being contacted by the Trustee to obtain a copy of Boothe's computer, Boothe again contacted Speer to advise him that the data on the computer would be given to the Trustee.   *See* Boothe Affidavit at para. 11.    Again, Speer did not protest.   *See* Boothe Affidavit at para. 11.

19.   The Trustee has been in possession of the data from Boothe's computer, including Speer's emails from Royce, since February 2010.  For nearly 10 months, Speer knew the Trustee was in possession of this data but has never once sought the protection of this Court to prevent the Trustee from reviewing any information contained on any of the Debtor's computers, including Boothe's computer.

20.   As part of the Trustee's investigation, the Trustee has been reviewing the electronic data on the Debtor's computers and Boothe's computer for months. It was not until the Trustee recently received the privilege log from Speer that he realized Speer is now

claiming a privilege for documents that the Trustee has had open access to for nearly 10 months.

**The Speer Privilege Log**

21.    The documents listed in the Speer privilege log are either not privileged or the privilege has been waived for the following reasons:

   a.    The emails now claimed as privileged were received on a Royce computer and at a Royce email address.  The company policy implemented by Speer at Royce is clear, "All electronic communications are the property of the Company and all information contained on any electronic communication system belongs to the company and nothing on them will be considered private."  "Electronic communications are e-mail, voice-mail, corporate Web sites and company Internet use."  "Electronic communication systems are to be used for company business.  Employees may conduct limited, reasonable and appropriate personal communications on the company's electronic communications system with the understanding that personal communications may be accessed, viewed, read or retrieved by a company Manager or employee." "Employees are NOT to disseminate any confidential information over the company's system."  *See* attachment to Boothe Affidavit.  The privilege was waived with respect to any email on a Royce computer, including Speer's personal e-mail communications.

   b.    Ms. Boothe is not an attorney and was not working in a capacity as an employee for an attorney involved in the Kopecky litigation.  The privilege was waived with respect to any emails delivered to her.

c.  Many of the communications involve third parties and, by definition, cannot be privileged. Some of the communications claimed privileged involved third parties—for example Sid Andrews, an accountant at the firm PricewaterhouseCoopers, the accounting firm assisting Royce Homes, LP with the Credit Suisse transaction, accounting matters and auditing matters. No privilege exists when third parties are involved.

d.  Many of the claimed privileged communications relate to the transaction with Credit Suisse.  Royce (i.e. the Debtor) was the party contracting with Credit Suisse so, clearly, any communication relating to the Credit Suisse transaction by definition had to be a communication with the Debtor and therefore not privileged as to the Debtor.  The Trustee has the right to assert and/or waive any privilege held by the Debtor.

e.  Some of the privilege claims involve matters of common interest with Royce. These can be broken into two categories:

i.  Kopecky Litigation—Royce Homes, LP, Hammersmith Group, Inc., and John Speer were co-defendants in the Kopecky Litigation, represented by a single attorney/law firm, Michael Wilk.  All communications with respect to this litigation are not privileged as to Royce.

ii.  The Royce entities, along with Royce Homes, LP, were represented by Porter & Hedges in various matters in which the companies were interrelated.  These emails are not privileged as to Royce because of the common interest doctrine.

      f.   John Speer was a fiduciary to Royce Homes, LP.  Any communication he had relating to any matter affecting Royce Homes, LP is not privileged against the Debtor or the Trustee.

## Arguments and Authorities

22.    The elements of the attorney-client privilege are as follows: "(1) where legal advice of any kind is sought; (2) from a professional legal advisor in his capacity as such; (3) the communications relating to that purpose; (4) made in confidence; (5) by the client; (6) are at his instance permanently protected; (7) from disclosure by himself or by the legal advisor; (8) except that the protection be waived." *United States v. El Paso Co.,* 682 F.2d 530, 539 (5th Cir.1982).  Whether the attorney-client privilege applies is determined on a case-by-case basis. *Upjohn Co. v. United States,* 449 U.S. 383, 396-397 (1981).

23.    The burden of proof to establish the existence of the attorney-client privilege rests on the party asserting the privilege.  *In re Sante Fe Intern. Corp.,* 272 F.3d 705 (5th Cir.2001); *U.S. v. Kelly,* 569 F.2d 928 (5th Cir.1978).  The party asserting the privilege also bears the burden of establishing that the privilege has not been waived.  *Variable Annuity Life Ins. Co. v. Penco, Inc.,* 2006 WL 581522 (S.D.Tex. 2006).  In other words, the privilege claimant must establish both the existence of the privilege and the absence of a waiver. *James v. Harris County Sheriff's Dept.,* 234 F.R.D. 150 (S.D.Tex.2006).

## Documents with "No Privilege" Should be Produced to the Trustee

24.    In *Commodity Futures Trading Commission v. Weintraub,* 471 U.S. 343, 358 (1985), the Supreme Court held that "the trustee of a corporation in bankruptcy has the power to waive the corporation's attorney-client privilege with respect to pre-bankruptcy communications."   In reaching its conclusion, the Court went through a lengthy analysis

of the corporate structure and how in bankruptcy, control of the corporation passes from its management to the trustee.

25.     Speer claims as privileged certain documents which relate to the legal representation of the Debtor.  Any communication by Speer involving or on behalf of the Debtor cannot be withheld as privileged.  The Trustee is the proper party to control the Debtor's privilege and is the only party with the right to assert and waive such privilege on behalf of the Debtor.  *See id.*  Any communication between counsel for the Debtor and the Debtor are not privileged as to the Trustee and should be immediately produced.

26.     To the extent that the Debtor was jointly represented by the same counsel as Speer or any Speer affiliated entity, there is now no privilege as to communications with counsel.  *In re Mirant Corp.*, 326 B.R. 646 (Bankr.N.D.Tex. 2005).   It is well established that, in a case of a joint representation of two clients by an attorney, one client may not invoke the privilege against the other client in litigation between them arising from the matter in which they were jointly represented.  *See Official Comm. of Unsecured Creditors v. Fleet Retail Fin. Group* (*In re Hechinger Inv. Co. of Del.*), 285 B.R. 601, 612 (D.Del.2002) ("Generally, where the same lawyer jointly represents two clients with respect to the same matter, the clients have no expectation that their confidences ... will remain secret from each other, and those confidential communication [sic] are not within the privilege in subsequent adverse proceedings between the co-clients."); *Bass Pub. Ltd. Co. v. Promus Cos. Inc.,* 868 F.Supp. 615, 620 (S.D.N.Y.1994)("Where there is a joint attorney-client privilege, there is no expectation that confidential information will be withheld from joint clients as there is no privilege between them."); *E.F. Hutton & Co., Inc. v. Brown,* 305 F.Supp. 371, 393 (S.D.Tex.1969)("[I]nformation imparted to the common

attorney relating to the subject of the joint representation is imparted for the mutual benefit of all the joint clients and is therefore not privileged against any of them."); *SIPC v. R.D. Kushnir & Co.,* 246 B.R. 582, 588 (Bankr.N.D.Ill.2000) ("[A]ccording to some decisions, because co-clients cannot reasonably expect that their common lawyer will withhold information from other co-clients ... those confidential client communications are not privileged in subsequent litigation in which the interests of the former co-parties become adverse ...."); *Yorke v. Santa Fe Indus., Inc.* (*In re Santa Fe Trail Transp. Co.*), 121 B.R. 794 (Bankr.N.D.Ill.1990)(former parent corporation could not use claim of privilege to prevent discovery by former subsidiary corporation where former parent corporation's in-house legal department represented both parties in sale of stock of former subsidiary corporation).

27.     The Court of Appeals for the Fifth Circuit has spoken clearly to this issue before.   *See Brennan's, Inc. v. Brennan's Rests., Inc.,* 590 F.2d 168, 172 (5th Cir.1979)("Assuming the prior representation was joint, defendants are quite correct that neither of the parties to this suit can assert the attorney-client privilege against the other as to matters comprehended by that joint representation."); *Garner v. Wolfinbarger,* 430 F.2d 1093, 1103 (5th Cir.1970) ("In many situations in which the same attorney acts for two or more parties having a common interest, neither party may exercise the privilege in a subsequent controversy with the other.").

28.     Any documents relating to the joint representation of the Debtor and Speer or any Speer affiliate should be immediately produced to the Trustee because no valid claim of privilege exists.

29.    Finally, attorney-client privilege takes on a special character when the privilege is asserted by a corporation or its directors or officers who owe a fiduciary duty to the stockholders; in such case, the attorney-client privilege can be abrogated for substantial cause.  *See In re Hendrick***,** 56 B.R. 280, 283 (Bankr. M.D. La. 1985) (Citing *Garner v. Wolfinbarger,* 430 F.2d 1093, 1103 (5th Cir.1970)).  Judge Steen notes in the *Hendrick* case that the analysis in *Garner* is firmly grounded in the principal of waiver of the privilege "for cause" when the adversary is one to whom a special duty is owed in the context in which the privileged communication was made.  In other words, the *Garner* doctrine does not only apply in shareholder derivative cases; rather it should be applied in any case in which an adversary owes a fiduciary duty.  In the case at hand, Speer had a fiduciary duty to the Debtor as well as its creditors.  Accordingly, any claim of privilege as to matters in which Speer was a fiduciary should be overruled and documents should be immediately produced to the Trustee.

**"Waived Privilege" Documents Should be Produced to the Trustee**

30.    Any voluntary disclosure inconsistent with the confidential nature of the attorney-client relationship waives the privilege.  If the client discloses attorney-client communications to unnecessary third parties, the client manifests intent to waive confidentiality.  The case law is clear that the presence of a third person when communications are made, or the disclosure of an otherwise privileged communication to a third person, eliminates the intent for confidentiality on which the privilege rests. *In re Subpoena v. Curran,* 2004 WL 2099870 (N.D .Tex.2004).  Disclosure of any significant portion of a confidential communication waives the privilege *U.S. v. El Paso Co.,* 682 F.2d 530, 539 (5th Cir.1982).

31.     In determining whether the privilege should be deemed to be waived, the circumstances surrounding the disclosure must be considered. *United States v. Zolin,* 809 F.2d 1411, 1415 (9th Cir.1987).  When the disclosure is involuntary, the privilege will be preserved if the privilege holder has made efforts 'reasonably designed' to protect and preserve the privilege.  *See In re 50-Off Stores, Inc.*, 213 B.R. 646, 655 (Bankr. W.D.Tex.1997) (citing *Transamerica Computer,* 573 F.2d at 650).  The privilege is waived if the privilege holder fails to pursue all reasonable means of preserving the confidentiality of the privileged matter.  The court should consider the circumstances surrounding a disclosure on a case-by-case basis to determine if there has been a waiver.  *Id.*  This analysis serves the purpose of the attorney client privilege, which is the protection of communications which the client fully intended would remain confidential, yet at the same time will not relieve those claiming the privilege of the consequences of their carelessness if the circumstances surrounding the disclosure do not clearly demonstrate that continued protection is warranted.  *Id.*

32.     Speer has waived privilege as to any document, including any e-mail, shared with any person other than Speer's counsel.  There are many examples on Speer's privilege log of documents shared with third parties who are not Speer's counsel and do not work for Speer's counsel.  In all such cases, the documents should be produced and should not be subject to a valid claim of privilege.

33.     Moreover, Speer waived the privilege as to all documents, including any e-mails, contained on Boothe's computer because Boothe is not Speer's counsel and she did not work for Speer's counsel.

34.    Even if any of the documents on Boothe's computer were privileged, Speer has waived the privilege by failing to take reasonable precautions to prevent disclosure to the Trustee.  Speer knew what was on Boothe's computer because he gave the data to her and he knew she was producing the data on her computer to the Trustee because she warned him twice.   Speer has known for at least 10 months that the Trustee has possession and access to documents he now claims are privileged – yet Speer has taken no action consistent with the intent that such communications remain confidential.

35.    Any document on any of the Debtor's computers is the property of the Debtor.   *See* attachment to Boothe Affidavit.

36.    Speer's personal use of the Debtor's computers to conduct "privileged" communications is inconsistent with the intent that such communications remain confidential.

37.    Speer has voluntarily disclosed and failed to seek protection for many documents he now claims as privileged.  All such documents should be produced to the Trustee and should not be held to be subject to a valid claim of privilege.

## **Prayer**

WHEREFORE, the Trustee respectfully requests that the Court compel the production of documents as described herein and for such other and further relief to which the Trustee is entitled.

Respectfully submitted this 31st day of December 2010.

**TOW & KOENIG, PLLC**

By:  _____/s/ Julie Koenig_____
          Julie Koenig
          Texas Bar No. 14217300
          Rodney Tow
          Texas Bar No. 20152500
          Fed. Id: 3196
          26219 Oak Ridge Drive
          The Woodlands, TX 77380
          Telephone:   (281) 681-9100
          Telecopier:   (832) 482-3979

**CAGE HILL & NIEHAUS, LLP**

By:  _____/s/ Michael Duncan_____
          Michael Duncan
          Texas Bar No. 06218700
          Cage, Hill & Niehaus, L.L.P.
          5851 San Felipe, Suite 950
          Houston, TX 77057
          Telephone:   (713) 789-0500
          Telecopier:   (713) 74-0344

**JONES MORRIS KLEVENHAGEN, LLP**

By:  _____/s/ Erin E. Jones_____
          Erin E. Jones
          Texas Bar No. 24032478
          Jones Morris Klevenhagen, LLP
          6363 Woodway Suite 570
          Houston, TX 77057
          Telephone:   (713) 589-5061
          Telecopier:   (713) 589-5513

**COUNSEL FOR RODNEY TOW, CHAPTER 7 TRUSTEE FOR THE ESTATE OF ROYCE HOMES, L.P.**

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on the 31st day of December, a copy of foregoing pleading was served in accordance with this Court's Order Limiting Service (Docket No. 56) to all parties on the attached Service List either by first class mail, postage prepaid and properly addressed, by email, or electronically by the Court's ECF system on all parties registered to receive such service.

                                         */s/ Erin E. Jones*
                                         Erin E. Jones